[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, whose maiden name was Bernice Decker, married the defendant on December 15, 1956 in Torrington, Connecticut. It was the second marriage for both parties. The defendant subsequently adopted the plaintiff's son by her first marriage. The parties had one daughter during the marriage. Both children are in their majority.
Following a two day trial, it was clear to the court that this marriage had broken down irretrievably and the court will enter a decree dissolving the marriage.
The plaintiff wife, who is 59 years old, was raised at 189 Dibble Street in Torrington, which residence became the marital home. The plaintiff and the defendant resided in an upstairs apartment during the early years of their marriage, while the plaintiff cared for her ailing mother. No rent was paid by the parties during that period. After her mother's death, the plaintiff made a claim against her mother's estate for that care, which claim was settled and the parties secured a mortgage to purchase the home for $12,000.00.
The mortgage was for $15,000.00. The estate claim was settled for $6,500.00 so the parties paid $4,500.00 to the estate for the home. It was agreed that the balance of the mortgage was spent to improve the home.
The plaintiff was employed on and off outside the family home during the course of the marriage. While she qualifies independently for social security benefits, her earnings over the necessary quarters were negligible in most years. During 13 of the 33 years of marriage, she was not employed outside the home, and for an additional seven years, she earned less than $1,000.00 per year,
The plaintiff also maintained a traditional role of homemaker, providing for the children and the defendant during the course of the marriage. The plaintiff also was responsible for paying household and family bills, and for writing any checks necessary for the defendant. This task became the focal point for dispute in this action.
The plaintiff complained and the court finds proven by the evidence produced at trial, that the defendant was a physically abusive husband. While the duration of the marriage and other evidence seem to indicate a well-liked and generous man, his use of alcohol and temper combined to form his Achilles' heal with respect to his wife.
The plaintiff further complained that the defendant kept the CT Page 913 company of other women during the marriage. While disputed by the defendant, his current girlfriend testified as to their affair and the duration of that liaison.
The plaintiff claimed at trial that the defendant did not contribute enough to the family, and that he was merely a "boarder" in the family home. She claimed that it was she who paid the mortgage and that he had no right to the family home, be it legal or equitable.
The plaintiff's health was characterized as "fair" at trial. While she suffers from arthritis and a back problem, she was employed recently on a part-time basis as a census worker. She impresses the court as a resourceful person, who, despite her age, could maintain some level of employment outside the home.
The defendant is 58 years old, and is currently employed as the Street Superintendant for the City of Torrington. He was consistently employed in the construction industry and prior to his employment by the City 11 or 12 years ago, he had been a labor foreman for O G Industries. While there was no evidence adduced at trial with respect to the level of education of the parties, it appeared to the court that the defendant has consistently improved his employment over the course of the last 23 years in that industry.
The court does not agree with the plaintiff's claim that the defendant worked "on and off". Rather, it appears that his work was consistent with seasonal slow-downs and lay-offs of his industry. Because of their habit of having the plaintiff pay the family bills, the defendant gave a certain amount of money from his paycheck to her weekly. Early in the marriage, that amount was $70.00 per week, and prior to the separation it was $250.00 per week.
The defendant claimed that the plaintiff had a problem with alcohol which led to one medical hospitalization. She denies this claim. The evidence seems to support the claims of domestic violence exacerbated by the use of alcohol and some use by the plaintiff as well.
The gravamen of defendant's claim was that family finances were mishandled by the plaintiff. While the court will discuss this in terms of distribution of marital property, it appears that the plaintiff was left to pursue her own interests of improving the home and acquiring things for herself and the children as a major activity. The parties both testified that they had only vacationed twice together, and they did not appear to share any interests in common. It appeared from the testimony that the defendant paid little, if any, attention to his wife, and, more importantly, to what she spent.
In 1984, the defendant inherited approximately $33,000.00 from his mother's estate. By the time of their separation in May of 1989, approximately $7,400 remained in that account. CT Page 914
In 1988, the parties secured a Home Equity Line of Credit when defendant was informed that the mortgage on the marital home was five months in arrears and the credit card debt amounted to approximately $10,000.00. Thereafter, the plaintiff managed to incur another round of credit card debt of an additional $10,000.00. The defendant claims that he agreed to sign the Home Equity loan after discussing with the plaintiff the need to limit expenditures on credit cards. She denied that claim.
When the defendant asked for an accounting of the Home Equity line of credit he was told that only $4,200.00 remained in that account. To date the plaintiff has again amassed credit card debt that exceeds $10,000.00.
The difficulty in addressing the respective equities in this case surrounds the sentimental attachment the plaintiff has to her family home, a home that was maintained through the marriage predominantly by the defendant, and the repayment of the $30,000 Home Equity loan. Furthermore, the parties are possessed of only this asset, and have limited incomes and no sayings, along with age and health concerns that limit their future acquisition of assets.
With respect to their futures, it appears that the defendant, who is his wife's junior by two years, has already embarked upon a new life with a woman who has shared his life since the separation. They have travelled together, and, while it appears that the defendant makes no financial contribution to her home, he is in a position of having happiness with another person. The plaintiff is close to retirement and will in all likelihood remain — tied to home and family, as she has lived most of her life.
In reviewing the statutory criteria in light of the evidence produced on this record, the Court makes the following awards;
Real Property
The marital residence located at 189 Dibble Street in Torrington is to remain the sole property of the plaintiff wife, subject to the first mortgage and the Home Equity Line of Credit.
The Court has taken into account the respective contributions as to the acquisition and maintenance of the family home in arriving at this distribution. The Court finds that the defendant's conduct towards the plaintiff during the marriage was the precipitating cause of the breakdown, but will not discount entirely the years of labor he expended on behalf of his family. Rather than giving him a share of the equity in the home, the plaintiff is ordered to pay the Home Equity line of credit which is currently a second mortgage on the property and hold the defendant harmless therefrom. The Court has also fashioned its orders with respect to debts of the parties bearing in mind that plaintiff is securing the CT Page 915 bulk of the equity in the only asset of the parties.
PERIODIC ALIMONY
The defendant shall pay to the plaintiff the sum of One Hundred Fifty ($150.00) Dollars per week as periodic alimony.
HEALTH INSURANCE
The defendant shall provide health insurance, that is Blue Cross, Blue Shield and major medical or its equivalent, as provided to him by his employer for the benefit of the plaintiff for the statutory period. The cost of that health insurance shall be borne by the defendant, and the cost of that to him has been considered in the award of periodic alimony.
LIFE INSURANCE
The defendant shall maintain life insurance as provided to him through his employment in the amount not to exceed Fifty Thousand ($50,000.00) Dollars with the plaintiff named as irrevocable beneficiary thereof.
MISCELLANEOUS ORDERS
1. The plaintiff shall retain the 1982 Buick free and clear of encumbrances or liens.
2. The defendant shall be responsible and shall pay all debts on his financial affidavit along with the Chemical Bank Master Card debt of $4,500.00 listed on plaintiff's affidavit.
3. The plaintiff shall pay the balance of those debts listed on her financial affidavit.
4. The parties shall each be responsible for their own attorneys fees in light of the fact that neither party has liquid assets from which a contribution can be made.
Judgment shall enter accordingly.
DRANGINIS, J.